[Civ. No. 16905.  First Dist., Div. Two.  Sept. 28, 1956.]

FLORENCE SEXTON, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation), Appellant.

Stafford P. Buckley and Edward J. Rice for Appellant.

Charles Bagby and John F. Foley for Respondent.

DRAPER, J. pro tem.*—Plaintiff had judgment upon a jury verdict for injuries sustained when she was struck by an interurban electric train of defendant. Defendant appeals.

The accident occurred at Wesley Station on appellant's private right of way in Oakland, where respondent was about to board a train which had come from San Francisco and was headed east toward the Trestle Glen district of Oakland. She was struck by another train of appellant, which was westbound to San Francisco.

At Wesley Station appellant maintains a small building for the convenience of its passengers. This structure is about 10 feet west of the westernmost of the double tracks, which here run in a north-south direction. Westbound trains use the westerly tracks—those nearest the station building—and eastbound trains use the tracks farthest from the building.

Respondent had worked in this area for a number of years, and it was her habit to take the Glen train home each evening. She left work at about 5:30 p. m. on the day of the accident, did some shopping in the area, and went to Wesley Station, where she sat down to wait for her train. Several people were in the station. After respondent had waited about 15 minutes, she saw the eastbound Glen train approaching the station. She stood up, walked out of the building, and waited to see where the train would stop. When the doors of the train

---

*Assigned by Chairman of Judicial Council.

started to open she began to walk toward it. She had arrived at the first rail when she glanced to her left and saw the westbound San Francisco train bearing down upon her, about 7½ feet away. She had heard no bell, whistle or other warning signal of any kind before she was struck. Other witnesses corroborated her statement that there was no audible warning.

A regulation of appellant requires that when a train is in the station no other train may approach that station. Respondent, through her long use of this line, knew that westbound trains always stopped short of the station when an eastbound train was stopped there.

There is testimony contradicting some of the facts stated above, but all conflicts in the evidence were for the jury to resolve. Hence appellant does not urge insufficiency of the evidence to establish its negligence. Rather, appellant contends that the evidence establishes contributory negligence of respondent as a matter of law. The argument is that in failing to look to her left before starting to cross the track intervening between her and the train she intended to board, respondent failed to exercise any care whatever.

But appellant here cannot have the benefit of the rule that a railroad track "is itself a warning" requiring a pedestrian "to make use of all his senses . . . to avoid the danger" of being struck by a train. This rule, stated in *Holmes* v. *South Pac. C. Ry. Co.*, 97 Cal. 161, 167 [31 P. 834], is often referred to as the "stop, look and listen" rule, since it stamps as contributory negligence *per se* the failure to stop, look and listen before crossing the tracks. (*Wilkinson* v. *United Railroads*, 195 Cal. 185, 196 [232 P. 131].)

This rule is not applicable at stations maintained for the use of passengers. There the high degree of care owed by a common carrier to its passengers comes into play. The "station rule" does not require a passenger to stop, look and listen before approaching intervening tracks to reach a train. On the contrary "the passenger, while not absolved from the duty of exercising care for his own safety, has the *right to presume* that the tracks intervening . . . will be kept safe while he is crossing; so that the mere fact that he fails to look and listen . . . will not necessarily be ascribed to his contributory negligence, and will not prevent a recovery of damages . . ." (*Wilkinson* v. *United Railroads*, *supra*, p. 199. See also *Ferran* v. *Southern Pac. Co.*, 3 Cal.2d 350 [44 P.2d

533], and *MacGregor* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 596 [59 P.2d 123].)

Here respondent did fail to look to her left before crossing the westbound tracks. But there is no evidence that she failed to listen, and any such inference from the fact that she failed to hear the westbound train is dispelled by the testimony of other intending passengers that they did not hear the train which struck respondent.

The present case is even stronger on its facts than the three cases last cited. Here, appellant's operating rule required the westbound train to stop short of the station when an eastbound train was stopped at the station. Respondent, from her long experience as a passenger on this line, knew this practice of appellant. Thus respondent had not only the "right to assume that the company will so regulate the movement of its trains . . . as to enable [her] to cross the tracks in safety" (*MacGregor* v. *Pacific Elec. Ry. Co., supra*, at p. 600), but she knew of and relied upon a specific practice of appellant in this respect.

The cases cited above are clear that failure to look and listen does not constitute contributory negligence as a matter of law, but that the question is, on all the circumstances of the case, one of fact for the jury. We cannot accept appellant's argument that the Wilkinson case is to be distinguished, and we conclude that the rule of that case governs here.

Appellant also contends that the award of $13,259.18 is so excessive as to require reversal. But it is not the function of an appellate court to fix the award of damages, even within broad limits, and thus to impose its views upon the trier of the fact. Pain and suffering are not subject to precise measurement by any scale, and their translation into terms of money damages is peculiarly the function of the trier of the facts. (*Hallinan* v. *Prindle*, 17 Cal.App.2d 656, 671 [62 P.2d 1075].) Here the trial judge, on motion for new trial, had the opportunity to review the award. In these circumstances, "an appellate court may interfere only in the event it appears . . . , as a matter of law, that the verdict was the result of passion or prejudice." (*Harris* v. *Lampert*, 131 Cal.App.2d 751, 752 [281 P.2d 292].)

There is evidence that respondent was badly bruised, suffered great pain, and that one result of the injury was "an anxiety state induced by adequate cause" which afforded considerable emotional difficulty for many weeks and which

had continued in lesser degree up to the time of trial. Her physician described her injuries as "moderately severe." She was hospitalized for 12 days and lost 6 weeks' work. Her work requires her to stand, and the injury to her knee made this very difficult. At trial, 18 months after the accident, she still suffered pain in the knee. Her doctor gave some testimony that this knee injury will have permanent results.

Her hospital bills were $459.15, doctor's bill was $200, clothing and personal effects destroyed in the accident were valued at nearly $200, and she had a substantial loss of wages. In the eyes of many, the award may be high. But we cannot say that it is excessive as a matter of law.

The judgment is affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied October 26, 1956, and appellant's petition for a hearing by the Supreme Court was denied November 21, 1956.