[Crim. No. 3339.   Third Dist.   Feb. 1, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LEE PEOPLES, Defendant and Appellant.

John Laugenour, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—This is an appeal from a judgment after a jury verdict convicting appellant of manslaughter in violation of Penal Code, section 192, subdivision 3(a) (driving a vehicle with gross negligence).

The case arose out of a head-on collision between an automobile driven north by appellant on County Road 102 in Yolo County and a pickup driven south thereon by one Herbert Schuler who was crushed to death as a result of the accident.

The fact that at the time of the accident appellant was under the influence of alcohol was established. Appellant's brief concedes "The evidence indicated that defendant and appellant was intoxicated at the time of the accident."

Appellant did not testify at the trial. He had, however, given statements after the accident during the same afternoon. He informed the police he had been proceeding to Woodland at the time of the accident, that his speed was between 45 and 50 miles per hour; that he was attempting to reach and turn left into County Road 29 (which intersects County Road 102). He then said, "I must have went to sleep. I wasn't driving, the other fellow was." In a later statement he repeated that his intent had been to turn into Road 29, but he stated then that he had gone to sleep or had had an attack and could only remember events to a point approximately one-half mile back from the scene of the accident. (He also denied the drinking which, as stated above, was clearly established and is now conceded.)

The point of impact and course of the two vehicles immediately prior to the accident were expressed in opinions included in testimony by Sergeant George W. Miller of the California Highway Patrol. The sole contention of error on

this appeal is that these opinions, which were received in evidence over objection, were inadmissible. Appellant argues that opinions on the ultimate issues in a case are an encroachment upon the jury's prerogatives.

Although there is a conflict between the various jurisdictions of this country on the question (see 66 A.L.R.2d 1048), this state is committed to the rule which, in a proper case, permits testimony expressing an opinion on the ultimate fact. It is stated by our Supreme Court in *People* v. *Cole,* 47 Cal.2d 99, 105 [301 P.2d 854] :

"... [I]n this state we have followed the modern tendency and have refused to hold that expert opinion is inadmissible merely because it coincides with an ultimate issue of fact. (*People* v. *Wilson,* 25 Cal.2d 341, 349 [153 P.2d 720] ; *People* v. *King,* 104 Cal.App.2d 298, 304 [231 P.2d 156] ; see *People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224] ; *Wells Truckways, Ltd.* v. *Cebrian,* 122 Cal.App.2d 666, 678 [265 P.2d 557] ; 7 Wigmore on Evidence (3d ed. 1940), §§ 1920, 1921, pp. 17, 18 ; 2 Morgan, Basic Problems of Evidence, p. 194 et seq.; 2 Wharton, Criminal Evidence (11th ed.), § 957, p. 1682.) ''

*People* v. *Cole, supra,* involved a doctor's opinion that a gunshot wound had not been self-inflicted. Other California cases have applied the same rule to opinion evidence on the point of impact and similar facts in automobile accident cases, and have stated that admissibility rests largely within the discretion of the trial court, whose ruling will not be overturned in the absence of an abuse of such discretion. (*People* v. *Haeussler,* 41 Cal.2d 252, 260 [260 P.2d 8] ; *Wells Truckways, Ltd.* v. *Cebrian,* 122 Cal.App.2d 666 [265 P.2d 557] ; *Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716 [232 P.2d 572].)

In the case at bench Sergeant Miller had been a member of the California Highway Patrol for seven years. During that period of time he had been assigned to traffic work, including accident investigation and had investigated approximately 1,000 accidents. He had attended the Highway Patrol Academy where he had received training in accident investigation and had studied the same subject in college.

The officer's opinion as to the point of impact was based upon evidence observed at the scene of the accident, to wit: (1) a gouge mark in the surface of the road, (2) scrape marks on the highway, (3) shattered glass in dirt spread out in a fan shape from the gouge mark, and, (4) upon the posi-

tions of the two automobiles and the damage to said automobiles after the accident and upon the direction they traveled until they came to a point of rest.

The gouge in the surface of the highway was approximately 1½ feet in diameter and 1 to 1¼ inches in depth. It was 2½ feet west of the center line. The officer testified from his experience that in accidents of this nature such a gouge is made by the front end of either or both vehicles being driven into the pavement at the point of impact. Beginning at the point of impact there was thin fine dirt and shattered glass scattered in a fan shape north of the gouge mark. There was no noticeable debris south of the gouge mark. In the opinion of the officer this debris had not been disturbed prior to his observation of it after the accident. The scrape marks were in an arc beginning at a point approximately 2 or 3 feet north of the gouge in the highway. The position of the automobiles and the scrape marks in the pavement indicated to the officer an uninterrupted direction of travel.

All of these factors plus the known fact of directions the two vehicles had been headed on the highway prior to the accident led the officer to the conclusion that appellant's automobile had crossed the center line and was proceeding in the improper lane at the time of the accident.

■ A photograph of the scene of the accident was introduced as People's Exhibit No. 1. It clearly shows the gouge mark, the two wrecked vehicles at their point of rest and the pavement scrape marks testified to by the officer. From this evidence alone no reasonable doubt could be left that the point of impact was in the southbound lane of travel—and appellant was traveling north.

Therefore, even were we impelled to find error in the admission of the opinion of ultimate fact by the officer in this case—which we are not—we would still have to hold that a jury, unaided by the opinion, could have reached no other reasonable conclusion than that appellant's admittedly contemplated left turn had in fact been commenced—across the highway and head-on into the victim's approaching vehicle. This being so, article VI, section 4½, of the Constitution would preclude a reversal.

Judgment is affirmed.

Friedman, J., and Schottky, J., concurred.